IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EPIC SYSTEMS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ACACIA RESEARCH CORPORATION and | ) | |
| RESOURCE SCHEDULING CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Epic Systems Corporation ("Epic"), hereby states its complaint against Defendants, Acacia Research Corporation ("Acacia") and Resource Scheduling Corporation ("RSC"), as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Epic is a Wisconsin corporation with its principal place of business at 1979 Milky Way, Verona, Wisconsin, 53593.

2.      Acacia is a Delaware corporation with its principal place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, California, 92660.

3.      Resource Scheduling Corporation is a Delaware corporation with its principal place of business at 500 Newport Center Drive, Newport Beach, California, 92660.

4.      This Court has subject matter jurisdiction over this matter under 28 *U.S.C.* §§ 1331 and 1338. The matter also involves claims arising under the Patent Laws, Title 35 of the United States Code, for a declaratory judgment of invalidity and non-infringement of U.S. Patent

No. 4,937,743. A copy of the patent is attached as Exhibit A. Jurisdiction is also based on 28 U.S.C. §§ 1338(a), 2201 and 2202.

5.     Venue for this matter is proper in this Court under 28 U.S.C. § 1391.

## FACTS AND CLAIMS

6.     Epic repeats and realleges each and every allegation set forth in paragraphs 1-5 above.

7.     This complaint is for declaratory judgment pursuant to 28 U.S.C. § 2201, et. seq. and arises under the Patent Laws of the United States, 35 U.S.C. 1, et. seq.

8.     On March 24, 2006, Epic received a letter from Acacia and RSC accusing Epic of infringement of U.S. Patent No. 4,937,743 (the "'743 Patent"). On information and belief, Acacia owns the '743 Patent. In the letter, Acacia claims that it "controls over 40 patent portfolios in various technology disciplines." The letter also states that RSC owns the rights to license and enforce the '743 Patent. The letter is attached hereto as Exhibit B. The letter created in Epic a reasonable apprehension of suit by Acacia and RSC against Epic.

9.     Accordingly, an actual controversy now exists between Epic and Acacia and RSC with respect to the alleged infringement, validity and enforceability of the claims of the '743 Patent.

10.     Epic has not directly infringed, contributorily infringed, or induced the infringement of any valid and enforceable claim of the '743 Patent.

11.     The '743 Patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112, as well as the regulations promulgated thereunder.

WHEREFORE, Epic demands judgment on its complaint against Acacia and RSC and demands a declaration: (1) that the claims in the '743 Patent are invalid and unenforceable for each of the reasons set forth above; (2) that the claims in the '743 Patent are not infringed by

Epic; (3) that Epic is entitled to a full recovery of all of its costs and attorneys' fees; (4) that this

case is exceptional; and (5) any such further and other relief as the Court deems appropriate.

OF COUNSEL:
Nicholas J. Seay
James R. Cole
Anthony A. Tomaselli
Kristin Graham Noel
Quarles & Brady LLP
One South Pinckney Street
Suite 600
Madison, Wisconsin 53703
(608) 251-5000
(608) 251-9166

Dated:  April 19, 2006

Robert H. Richards, III (#706)
Jeffrey L. Moyer (#3309)
Anne Shea Gaza (#7339)
rrichards@rlf.com
moyer@rlf.com
gaza@rlf.com
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
302-651-7701
  Attorneys for Plaintiff
  Epic Systems Corporation

JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Epic Systems Corporation | ACACIA Research Corporation and Resource Scheduling Corporation |

**(b)** County of Residence of First Listed Plaintiff _____Dane County, Wisconsin_____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant____New Castle County____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert H. Richards, III
Jeffrey L. Moyer
Anne Shea Gaza
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth In Lending ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 892 Economic Stabilization Act |
| ☐ 230 Rent Lease & Eject | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 893 Environmental Matters |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 550 Civil Rights | | | ☐ 894 Energy Allocation Act |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | | | ☐ 895 Freedom of Information Act |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Justice

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statues unless diversity): 28 U.S.C. §§1331, 1338, 2201, 2202
Brief description of cause: Action under patent laws for declaratory judgment

**VII. REQUESTED IN COMPLAINT**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions:)  JUDGE _____  DOCKET NUMBER _____

DATE April 19, 2006

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44**
Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title

(b) County of Residence. For each civil case filed, except U S plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U S plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved)

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)"

II. Jurisdiction. The basis of jurisdiction is set forth under Rule 8 (a), F R C P, which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below

United States plaintiff. (1) Jurisdiction is based on 28 U S C 1345 and 1348. Suits by agencies and officers of the United States are included here

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box

Federal question. (3) This refers to suits under 28 U S C 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U S is a party, the U S plaintiff or defendant code takes precedence, and box 1 or 2 should be marked

Diversity of citizenship. (4) This refers to suits under 28 U S C 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases )

III. Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party

IV. Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause

V. Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive

VI. Origin. Place an "X" in one of the seven boxes

Original Proceedings. (1) Cases which originate in the United States district courts

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U S C, Section 1441. When the petition for removal is granted, check this box

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date

Transferred from Another District. (5) For cases transferred under Title 28 U S C Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U S C Section 1407. When this box is checked, do not check (5) above

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F R C P

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded

VIII. Related Cases. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases

Date and Attorney Signature. Date and sign the civil cover sheet
(rev 07/89)

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No.  0 6 - 2 5 5

## ACKNOWLEDGMENT
## OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___2___ COPIES OF AO FORM 85.

_____
(Date forms issued)

_____
(Signature of Party or their Representative)

MATTHEW T. MAIRS
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action

# EXHIBIT A

# United States Patent [19]

## Rassman et al.

[11] Patent Number: 4,937,743

[45] Date of Patent: Jun. 26, 1990

[54] **METHOD AND SYSTEM FOR SCHEDULING, MONITORING AND DYNAMICALLY MANAGING RESOURCES**

[75] Inventors: **William R. Rassman**, Agoura, Calif.; **Bradley M. Berman**, Omaha, Nebr.; **Scott Blau**, Yonkers, N.Y.; **Andrew Chiang**, Fort Lee, N.J.

[73] Assignee: **IntelliMED Corporation**, Fort Lee, N.J.

[21] Appl. No.: **96,027**

[22] Filed: **Sep. 10, 1987**

[51] Int. Cl.⁵ ............................................. G06F 15/21


[51] Int. Cl.$^5$ ................................... G06F 15/21
[52] U.S. Cl. ................................. 364/401; 364/518
[58] Field of Search ............... 364/401, 518; 434/108

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,725,650 | 4/1973 | Gelder | 235/151.3 |
| 4,019,027 | 4/1977 | Kelly | 434/108 |
| 4,336,589 | 6/1982 | Smith et al. | 364/403 |
| 4,547,851 | 10/1985 | Kurland | 364/401 |
| 4,591,983 | 5/1986 | Bennett et al | 364/403 |
| 4,646,238 | 2/1987 | Carlson, Jr. et al. | 364/403 |
| 4,700,318 | 10/1987 | Ockman | 364/518 |

### OTHER PUBLICATIONS

"The Classifier", Mount Castor Industries, Inc., Abstract, citation from Microsearch File of Orbit, AN: 86-036077.

"Class Scheduling", CMA Micro Computer, Abstract, citation from Microsearch File of Orbit, AN: 86-035879.

"CSL Scheduling", Chancery Software Ltd, Abstract citation from Microsearch File of Orbit, AN: 87-040814.

Henry Fersko-Weiss, "Master Plan: Project Management Software", PC Magazine, Sep. 29, 1987, pp. 153-157.

Renouard, C. A., "A Computerized Inventory Model for Production Control", Control Engineering, Apr. 1971, pp. 61-64.

Andrew Layman, Time-Line, pp. 3-9, 14-27, 113-119, 124-127, 1984.

Primary Examiner—Jerry Smith
Assistant Examiner—Gail O. Hayes
Attorney, Agent, or Firm—Fitzpatrick, Cella, Harper & Scinto

[57] **ABSTRACT**

The invention relates to the method for the prospective scheduling, periodic monitoring and dynamic management of a plurality of interrelated and interdependent resources using a computer system. The method includes providing a data base containing information about the resources and availability of the resources as a function of time. Indicia can be made to appear on the display to provide visual identification of symbols as well as information about scheduling, status and conflicts involving the resources. In addition, access to the data base can be made available to provide a continuous update of the display so that the display of the resources is for the most recent data in the data base. Access to the data base can also permit the operator to call up a wide variety of information about the resources and can also be used to track events and procedures.

**61 Claims, 9 Drawing Sheets**



**U.S. Patent**     Jun. 26, 1990     Sheet 1 of 9     **4,937,743**

# FIG. 1.



**FIG. 1A.** 

**FIG. 1D.** 

**FIG. 1B.** 

**FIG. 1E.** 

**FIG. 1C.** 

# FIG. 2.



# FIG. 3.





FIG. 4.

## FIG. 5.



U.S. Patent    Jun. 26, 1990    Sheet 7 of 9    4,937,743

# FIG. 6.



## FIG. 7.



## FIG. 8.



## FIG. 9.



4,937,743

1

# METHOD AND SYSTEM FOR SCHEDULING, MONITORING AND DYNAMICALLY MANAGING RESOURCES

## FIELD OF INVENTION

The invention relates to a method for managing resources and particularly to the method and system for the prospective scheduling and real time dynamic management of a plurality of interdependent and interrelated resources using a computer system for communicating information.

## BACKGROUND OF THE INVENTION

Many different fields require the management of resources in order to carry out programs and schedule activities effectively and efficiently. For example, the construction of a building requires scheduling the use of general and specialized personnel, of particular pieces of equipment and of delivery vehicles. In addition, a number of these resources may have to be shared with other construction projects at other sites. It also involves managing the rescheduling of the use of those resources as time passes and events unfold, often not in accordance with the original schedule.

Similarly, the efficient and effective use of surgical operating rooms in a hospital requires coordinating the use of numerous different resources, usually requiring collecting and gaining access to and then making use of information derived from many different sources. Some of the resources which must be managed and coordinated in a surgical suite or wing include the operating rooms, the surgeons, the anaesthesiologists, the residents, the nurses, the technicians, specialized pieces of equipment and the like.

In the last decade, there has been a significant increase in the use of computers and computer display systems for accessing and displaying data. For example, U.S. Pat. No. 3,725,650 discloses a method and arrangement for visually representing industrial management data. This patent teaches the use of a computer display for representing data in the form of bar-graphs or pie-graphs. The displays are for past and real time data and do not include projections into the future. In addition, each graph is independent of each other graph so that the impact of a change in one will not affect another. There is no suggestion in this patent that the method therein disclosed could be used for prospective or dynamic management of the utilization of resources.

U.S. Pat. No. 4,646,238 relates to a computerized system for planning the testing and grading of products as part of a manufacturing process. This patent does not disclose any system for prospectively scheduling the utilization of resources, nor does it disclose any method for monitoring actual utilization of resources, nor does it disclose a system where scheduling conflicts are noted.

U.S Pat. No. 4,547,851 relates to interactive communications systems used in restaurants for processing food orders by patrons and for making entertainment, like video games available to patrons. It does not relate to resource scheduling, either prospectively or dynamically.

U.S. Pat. No. 4,591,983 discloses a hierarchical knowledge system and does not appear to pertain at all to scheduling of interrelated and interdependent resources.

2

U.S. Pat. No. 4,336,589 discloses a method and system for monitoring and controlling the flow of articles in a warehouse. It is designed primarily to keep track of orders and of the articles ordered as they are taken from stock and prepared for shipment. There is no suggestion that such a system could be used for resource scheduling, management or monitoring.

Project planners which employ computers are also well known. Such project planners most commonly are task or activity focused. They are designed primarily for sequential scheduling of related tasks. For example, if a construction project must proceed through six phases, and phase 2 cannot begin until phase 1 is ⅔ complete, and phases 3, 4 and 6 each must await completion of preceding phase, but phase 5 can begin simultaneously with phase 4, a project planner could be used to set up the schedule at the outset and to adjust that schedule to reflect slippages as they occur. Project planners, however, are not well equipped to manage the resources employed in the various activities or to alert the operators to the need to adjust the scheduled activities in response to other demands upon those resources.

The management of resources, utilization of which can change in time and can have complex interrelationships, can present serious problems to effective scheduling of the use of those resources and the tasks or activities in which they are employed. Inefficient and particularly incompatible solutions to these problems can be very costly in a manufacturing setting, in the construction of a building and elsewhere. Inappropriate solutions to such problems become far more serious when they involve medical facilities and the performance of surgery because they can then present life and death issues.

What is needed is an effective display of at least some of the available resources as a function of time associated with a data base of information relating to displayed resources and perhaps to others as well. In addition, such a system should, most advantageously, be capable of being accessed in order to produce additional displays relating to additional resources. In one of its more general forms, such a system should permit changing the time scale to accommodate widely diverse applications. Most desirably, it should also be able to display short range as well as long range projected (and/or historical) utilization without distorting relationships between displayed data when going from short to long range or vice versa.

Additionally, and, in some settings, most importantly, the system should be capable of showing interrelationships between resources so that changes in utilization of one or more resources, reveal the impact of those changes upon the availability and utilization of other resources as well as upon anticipated future utilization of the same resource and upon the activities in which they are employed.

## SUMMARY OF THE INVENTION

The invention relates to a method for the dynamic management of a plurality of resources, preferably using a computer system. The method includes providing a data base that includes information about the available resources and graphically displaying anticipated and/or actual utilization of the resources as a function of time. Generally, the displays can be in the form of bar graphs, pie charts, line graphs or other geometric shapes. Various types of indicia may be employed to provide visual auditory or other sensory communica-

4,937,743

3

tion of information pertinent to the resources and/or the utilization thereof. "Scheduling indicia" may be used to indicate utilization (historical and/or prospective) of resources, "status indicia" may be employed to reflect current status of events and "conflict indicia" may be used to alert operators to scheduling conflicts. In one of its preferred configurations, the invention contemplates providing access to a data base to permit continuous updating of the information stored therein so that when resource utilization is displayed it reflects the most recent data in the data base.

In another embodiment, the method and system of this invention gives access to the data base in order to provide information, beyond that appearing on the display, relative to a selected resource. Provision can also be made for selectively changing the display in order to present data relating to different aspects of one or more resources.

Further, the invention contemplates the automatic adjustment of schedules as conflicts arise as well as the automatic communication of those adjustments. It also contemplates automatic notification to relevant personnel and automatic initiation of activities (cutting a purchase order, turning on a furnace etc.) and procedures upon reaching certain milestone points.

The system can also incorporate accountability means whereby it can be determined whether resources are being used properly and procedures are being followed in accordance with established rules. In addition, a record keeping function can be incorporated to document what resources were used, for what procedures, by whom and when.

Of course, not every application of this invention will necessarily incorporate all of the above features. It is anticipated that some applications will have need for only some of the features and other, more complex or more sophisticated or more automated applications will make use of more of the features contemplated by the instant invention.

BRIEF DESCRIPTION OF THE DRAWINGS

A description of the invention will be given in connection with the drawings which include:

FIG. 1 shows a prospective display of scheduled resources in accordance with the invention.

FIG. 1A shows one of the cells from FIG. 1 after the first milestone has been completed.

FIG. 1B shows one of the cells of FIG. 1 with the identifying label having been moved to above the cell to denote that the patient is in the room.

FIG. 1C shows the same information as in FIG. 1A, but using a different means to indicate completion of milestone 1.

FIG. 1D shows the same cell as FIG. 1A, but at a later point in time, after the second milestone has been passed.

FIG. 1E shows a cell in which a circle or clock face is used to display status indicia.

FIG. 2 shows the schedule of FIG. 1 as a dynamic display, modified in accordance with the present invention by events as they have occurred.

FIG. 3 shows the schedule of FIG. 1 after completion. It is an historical record generated in accordance with the present invention, showing not only what took place, but also how reality varied from projected utilization.

FIG. 4 shows an alternative method for graphically displaying scheduling information while simultaneously

4

displaying in textual form, information about the scheduled resources.

FIG. 5 shows the display of FIG. 4 at a later point in time.

FIG. 6 shows a display of a prospective schedule of industrial projects in accordance with the invention.

FIG. 7 shows an dynamic display of the schedule of FIG. 6, modified to take into account some events as they have occurred.

FIG. 8 shows a reconfigured display of some of the information appearing on FIG. 1.

FIG. 9 shows a display wherein a pop-up window, overlayed upon the display of FIG. 1, shows information about case klm.

DISCUSSION OF THE INVENTION

The method according to the invention enables dynamic control of a complex project involving a plurality of resources which are interrelated and which can change with time. Preferably, the method utilizes a display system such as the type associated with a personal computer and a keyboard for selectively changing the display. In addition, a data base containing data relating to the resources can be made available. The data base can be updated from one or more real time sources and this in return can result in an update of the data being displayed. The keyboard can also be used to input data to the data base and to do prospective scheduling. The data preferably is displayed graphically as a function of time to portray the temporal relationships between various resources, activities and events.

Inputting, modifying, handling and accessing of the data can be carried out using known methods and techniques. Similarly, generating appropriate graphical displays can be done by using well known techniques.

There are numerous situations which can effectively be managed by the use of the instant invention. One such situation is monitoring and planning the use of the facilities and other resources available in the surgical suite of a hospital. Each operating room represents a resource and information can be provided in the data base about each operating room. For example, some operating rooms may be limited to ambulatory procedures, some may be specifically designed and equipped for open heart surgery, some may require only 15 minutes for clean up between procedures and others might need 20 minutes. Some specialized pieces of equipment may be limited to use in only some of the operating rooms. Some equipment may require long periods of sterilization between procedures, while others require none. Also, some resources may be unavailable because of construction, repair or maintenance activities. If the particular application calls for a rule-based system (as will be discussed below), the applicable rules would normally be in the knowledge or data base. Preferably, all such information would be included in a primary or semi permanent data base.

The primary data base could also include standard information about certain known activities or procedures. For example, it may include information like: an appendectomy should be scheduled to take 90 minutes, requires that medications A, B, C and D be available, that only operating rooms X, Y and Z are suitable for such a procedure and that only doctors J, K and L are authorized to perform such operations.

A supplemental, or transitory data base, preferably integrated with the primary data base, can also be employed to store information more frequently changed

4,937,743

5

than the information in the primary data base. The transitory data base could include information about the planned utilization of a given resource on a particular day or at a particular time. Tasks or procedures waiting to be scheduled could also be in the transitory data base. It could also include relevant information about a particular patient (e.g., name, doctor, procedure to be performed, allergies) who is scheduled for surgery. If anything in the planned utilization is incompatible with information in either the primary or secondary data base, a conflict indicator can be made to appear on the display or on audible signal given. For example, if the procedure is schedule for a room in which construction is going on, a conflict indicator would be displayed. Similarly, if the patient is allergic to medication that is called for, a conflict indicator would alert the operator of the system to the problem.

Each surgical operating room has a planned use in time and the intended use may be associated with a particular patient, pieces of equipment and procedure, as well as key personnel who will be involved in performing the operation and the medication to be administered.

Each surgeon also represents a resource and the surgeon's prior commitments may be important for determining the availability of the surgeon for other surgical operations or in case of an emergency. In the same way, a patient can be regarded as a resource and the planned locations and activities of the patient can be displayed so that the patient can easily be located. Similarly, pieces of equipment and key personnel can be treated as resources. All this information would normally be put in the supplemental data base and would then be searched along with the primary data base, each time a resource is scheduled for use and each time a schedule is modified.

As can readily be appreciated, it is not unusual for the actual time taken to complete a particular procedure to vary from the scheduled or anticipated time. If the actual time exceeds the projected time, such information should be readily available in order to determine if alternate arrangements must be made. For example, such a deviation could affect subsequent scheduled use of the operating room. In addition, the extended involvement of the patient, the surgeon, key personnel and particular pieces of equipment could have an impact on other surgical procedures which have been planned for that surgeon, those personnel and those pieces of equipment. It could also affect other procedures that might have been scheduled for that patient.

As used herein, a "resource" in the hospital setting could be a room, a person, a piece of equipment, or the like. In other settings, "resources" could include containers, vehicles, supervisors, workers units of goods, blocks of time, dollars, aircraft, boarding gates, pilots and the like. Some resources may be reusable, others may be subject to depletion, and still others may be renewable. Generally, a resource has a known and/or anticipated availability and can be related to one or more other resources as a function of time or as a function of some other consumption, depletion or saturation. As those skilled in the art will readily appreciate, consumption, depletion, saturation and the like are analogous to time in that each can be used as a measuring yardstick. For example, a work day can be viewed as consisting of 32 fifteen minute blocks of time during which activities can be scheduled and resources used. Similarly, a reservoir of 2000 items may be viewed as

6

consisting of 500 groups of 4, with various activities and resources scheduled for utilization as different groups of 4 are consumed. The term "time," as used herein, should be understood in its broadest sense and not limited to measurements based upon rotations of the earth.

The availability and utilization of resources can be displayed as a function of time by use of "scheduling indicia". Progress of a planned procedure can be monitored and displayed by use of "Status indicia." Incompatible scheduling of resources can be signalled by the displaying of "conflict indicia." Any of the several indicia, scheduling, status or conflict, described herein, can be displayed in a myriad of ways, including color changes, color bars, shadings, alphanumerics and the like, and combinations thereof. The several indicia can also be displayed by the use of highlighting, geometric symbols, flashing, and/or enhancements such as a brightened frame around data.

While the operator of the system can select certain resources for primary display purposes, the system monitors utilization, not only of the displayed primary resources but also of other or secondary resources which may or may not appear on the display, but which are used in conjunction with the displayed primary resources. To illustrate, the operator may choose to display "operating rooms" as the primary resources. One of those operating rooms, 0, however, may require surgeon S, anaesthesiologist A, heart/lung machine H and heart monitor M. Resources S, A, H and M may be referred to as secondary resources. If the procedure scheduled for room 0 takes longer than expected, the system will display conflicts, not only with respect to the primary resource, operating room 0, but also with respect to scheduled utilization of the secondary resources, surgeon S, anaesthesiologist A, heart/lung machine H and monitor M. The system can, of course, be so configured as to suppress one or more of these indicia.

In using the system of the instant invention, the operator collects information from various sources concerning needs or requests for use of the resources. In the context of a hospital surgical suite this might involve requests from surgeons for operating rooms, for pieces of equipment, perhaps for particular staff members or for other physicians, such as anaesthesiologist's. Each surgeon would identify the procedure to be performed, the anticipated time to complete the procedure, patient information and other relevant data. Other information might also be supplied, such as other commitments of involved personnel.

The operator loads this information into the data base in any conventional manner and then proceeds to schedule the various resources. If an attempt is made to set up a schedule that involves apparently inconsistent or incompatible use of a given resource, a conflict indicator would be displayed. Having thus been alerted, the operator would then either revise the proposed schedule or determine whether the conflict is real or only apparent.

To illustrate the difference between real and apparent conflicts, consider the situation of a surgeon employing a new procedure which only a few people have been trained to use. The new and unique aspect of the overall surgery may take only 30 minutes of an anticipated 3 hour surgery. The other steps to be performed, e.g., opening the patient in preparation for the critical procedure, stabilizing the patient on the heart/lung machine and closing the wound after the new procedure has

4,937,743

7

been completed, could be performed by other surgeons. Nevertheless, since the operating room would normally be assigned to the primary surgeon for the entire 3 hour period, the system would display a conflict indicator if that primary surgeon were scheduled elsewhere during any part of those 3 hours. In the real world, however, that surgeon's personal presence might only be required for 30 minutes, thereby allowing him to discharge other duties during the remaining 2½ hours when the operating room is being used in his name.

Recognizing that some conflicts may be real and others only apparent, the system and method of the present invention can be made to recognize different kinds of conflicts, some which it "knows" are irreconcilable, some which it "knows" are susceptible of accommodation and some which it is unable to "recognize" as falling in either category. Each type of conflict could be indicated by its own unique conflict indicia. With that kind of information displayed, the operator can tell whether to reschedule resources immediately or whether to check further to see if a real conflict exits.

After collecting and usually, but not necessarily, after loading the relevant information into the data bank, the operator decides which resources are to be "primary" for display purposes and which are to be "secondary". In the hospital setting the operator may select "operating rooms" for display as the primary resources. Alternatively, "surgeons" or "heart/lung machines" or "CT scanners" or "nuclear magnetic imagers" etc. or some combination thereof might be chosen.

Assume, for illustration purposes, "operating rooms" is selected for display as the primary resources. Initially, the screen will display only the two axes—time (down the left margin), and operating rooms (across the top as column headings). Although at the outset the remainder of the display would normally be blank, it need not be. For example, for each unscheduled block of time the display can be made to show "open" or some equivalent designation. Also "repair" may be used to reflect that a particular room is not available for scheduling. Designations such as "repair," "construction" "sabatical" could be made to appear automatically as long as the requisite information has been stored in the data base.

The operator would then proceed to prepare a schedule, beginning with "Case abc" for operating room 1. The operator could schedule that case to begin at 7:00 a.m. and to end at 8:45 a.m. Or, if the information as to "Case abc" had already been loaded into the data base, once the starting time had been selected, an automatic search of the data base could cause the system to calculate and display the end point. In either case, a scheduling indicator would be displayed to reflect utilization of the primary resource, in this instance, "Rm 1". In FIG. 1, the vertical rectangle, labeled "Case abc" is the scheduling indicator. In similar fashion, the remaining operating rooms could be scheduled and scheduling indicia displayed. As long as nothing is planned for one of the primary resources at a particular time, the blank screen or "open" at that location would constitute the scheduling indicator.

During the scheduling of the primary resources, the system can be made to monitor conflicts in utilization involving primary as well as secondary resources. If such conflicts are detected, a conflict indicator will be displayed. The conflict could involve only primary resources, e.g. two procedures scheduled for the same operating room at the same time. In that event, the operator would be able to detect the nature of the con-

8

flict on the display. However, the conflict could involve secondary resources, some of which may not appear on the display. In that event, the operator would be alerted to look for the conflict among the secondary resources. Alternatively, by use of color, shading, shape positioning or the like, the conflict indicia itself can identify the secondary resource which is the source of conflict.

On the display, a scheduling indicator showing planned or actual use of a particular primary resource during a given block of time can be referred to as a "cell". On FIG. 1 the rectangle showing that "Case abc" is scheduled for Room 1 from 7:00 to 8:45 a.m. would be a "cell". Each cell could be given a title which could be made to appear above the cell or within its confines. Space permitting, a cell could also be made to have several pieces of data relating to secondary resources displayed therein. For example, within the cell that represents "Case abc" the name of the surgeon or the type of equipment being employed could be displayed.

In the event it is decided to display secondary resources within cells, such secondary resource displays could be used to indicate conflicts. For example, if Doctor S were scheduled simultaneously in two operating rooms, the display of Doctor S as a secondary resource in either of those two cells could be made to flash. Such flashing would, in that embodiment, constitute the conflict indicia.

The display of secondary resources could also be employed to make additional options available. For example, instead of having to go through a menu, simply by moving the cursor to one of those displayed secondary resources, the system could be made to display a window with that secondary resource s schedule or other information about that secondary resource. Such a window is shown in FIG. 9.

Thus, the system need not be menu driven. The use of shortcuts, such as displays of secondary resources within cells, may avoid the use of menus. However, in the more complex and/or more sophisticated applications of the instant invention, it is unlikely that sufficient short-cuts can effectively be used so as to avoid all use of menus.

In the displays illustrated in FIGS. 1 through 3 and 6 through 8, along the Y axis time is shown running from top to bottom, and along the X axis the primary resources are shown. As will readily be understood, which resources to display, and along which axis is a matter of choice and convenience. Similarly, the time intervals can be selected to match the needs of the application. Moreover, as illustrated in FIGS. 4 and 5 those time intervals need not even be displayed.

Turning now to FIG. 1, the display depicts a mixture of resources and their availability in time. The resources are labeled across the top using abbreviations in which "Rm" is room, "Doc" refers to a medical surgeon, "Mic" refers to a particular type of apparatus, namely a microscope and "Res" refers to some other piece of equipment.

The time is shown at the left in FIG. 1, starting with 07:00, based on a 24-hour clock. It is usually most convenient to have all of the primary resources in a display of the same type, such as rooms. However, such uniformity is not essential. As can be seen, the primary resources selected for display in FIG. 1 are of three different types. The primary resources in the first three columns, "Rm 1", "Rm 2", and "Rm 3", are of one type, but the primary resources of the last three columns,

4,937,743

9 | 10

are of two other types. The primary resource of column 4 is a surgeon and the primary resources of columns 5 and 6 are pieces of equipment.

In FIG. 1, "Rm 1" can be taken to refer to a surgical operating room. At 07:00 in the morning "Case abc" is scheduled to occupy "Rm 1" until 08:45. Thereafter, "Case def" will be in "Rm 1" from 9:00 until 09:45.

Rm 2 has "Case ghi" from 07:00 to 09:;30. Rm 3 has "Case klm" from 07:00 to 07:15 which is followed by "Case mno" from 07:45 to 08:30. "Case prs" follows from 08:45 to 09:00 and then "Case tuv" from 09:15 to 09:45.

While there may be many surgeons involved, only the activities of the surgeon "Doc a" are shown. "Doc a" will be in Rm 3 from 7:45 to 8:15, involved in "Case abc" from 7:45 to 8:15 and in Rm 4 (not displayed) from 9:00 to 9:45. "Mic x" will be used by "Doc a" from 7:00 to 7:15, will be used for "Case mno" from 7:45 to 8:15 and will be in room 1 from 8:45 to 9:45. Also, the resource "Res y" will be used for "Case abc" from 7:00 to 7:15 (even though "Case abc" will continue long after 7:15) and will then be moved for use in "Case ghi" (already in progress) from 7:30 to 8:00. Resource "Res y" is then shown as being assigned to "Case def" from 8:15 to 9:30. Although "Case def" is not scheduled to begin until 9:00, keeping "Res y" available for that case from 8:15 does not necessarily represent a conflict, although it may represent a waste of a valuable asset. Depending upon the needs of the particular application, such scheduling of "Res y" could, but need not, trigger the display of a conflict indicator.

In FIG. 1, "Case abc" is scheduled from 7:00 to 8:45. "Doc a" is scheduled to be involved in that case, but only from 7:45 to 8:15. He is also scheduled for "Rm 3" ("Case klm") from 7:00 to 7:15. If "Case abc" is Doc a's case, then when the operator tried to schedule him for Rm 3 ("Case klm") from 7:00 to 7:15 a conflict indicator would have been displayed. The operator would then have checked, determined that Doc a was needed in Rm 1 ("Case abc") only from 7:45 to 8:15 and then overridden or suppressed the conflict indicator.

The display in FIG. 1 represents the results of a prospective scheduling of activities and has been presented for a predetermined time period. Revising the time scale (from 15 minute to 30 minute intervals, for example) will allow the operator to see further into the future but will result in the size of the scheduling indicia to be physically reduced. The distances between cells under each resource will also shrink so that resolution of adjacent cases in time may not be discernible. Such shrinking of the time scale will also permit less information, for example, about secondary resources, to be displayed within each cell.

Time scale compression may also trigger conflict indicia. For example, if the scale of FIG. 1 were changed from 15 minute intervals to one hour intervals, conflict indicia would be displayed between several of the cells, including "Case abc" and "Case def" in Rm. 1. Each cell would be occupying a portion of the time block 8:00 to 9:00.

The use of conflict as well as status indicia to communicate data permits communication of multi-dimensional information on a two dimensional display. Some of the data which cause the display of conflict or status indicia may be drawn from the semi-permanent data base, some may be from the transitory data base and some may be from current or real time inputs.

In a hospital surgical wing application, as well as in many other applications to which the instant invention can be put, inclusion of an internal real-time clock would be quite advantageous. For example, such a clock could be used to tell the operator which resources are in use and which ones are available at the time of viewing. It could also enable the viewer to determine where a particular resource, such as "Doc a" is at the present time. In addition, the inclusion of a real-time clock can enable automatic display of conflict indicia.

If timely information is available, status indicia can be used to monitor and display progress of a procedure. The entry of the patient into the operating room could be signalled by use of the identifying label. "Case abc" could be blue before the patient enters, orange as long as the patient is in the room and red after the patient has left. Alternatively, the label could be moved from within the cell to a site just above it to signify that the patient is in the room (FIG. 1B). Other status indicia could be used to monitor progress of the surgery. One way to do that would be to have the cell representing the time the patient is in the operating room changed progressively as the surgery proceeds toward completion. For example, initially the cell can be changed so that one-quarter of it along its time length is in a contrasting color or distinctive pattern (FIG. 1A) to indicate that step 1 has been completed. Another way would be to use alphanumerics, such as "Step 1" in a column occupying the first quarter of the scheduling indicator cell (FIG. 1C). If the label is used to signify entry of the patient, the first column within the cell would be used to indicate completion of step 1 (FIG. 1C). Status indicia might also take the form of a clock face, part of which is shaded or colored as the procedure progresses or as time passes (FIG 1E). Moreover, a combination of such indicia could also be used.

When a second milestone or significant stage has been reached, a second status indicator could be displayed. As an example, a second column, ½ the width of the cell, could be changed to a contrasting color (FIG. 1D). Additional indicia, for example, additional columns within the cell, could be used to represent other milestones or significant stages during the surgery.

The method of the instant invention, when a real-time clock is incorporated, can be made to display status indicia automatically. To illustrate, "Case abc" (FIG. 1) might involve four major stages. Assume that stage 1 is expected to take twenty minutes, stage 2 thirty minutes, stage 3 forty minutes and stage 4 fifteen minutes. Means, for example, a signal button, can be provided in the operating room to indicate when each stage has been completed. If that button is depressed on or before 7:20 a.m., a status indicator in the form of a vertical bar within cell "Case abc" and occupying ¼ of that cell, can be made to appear (FIG. 1A). However, if the real-time clock reaches 7:21 before the signal button is depressed, that status indicator can be made automatically to begin flashing and to continue flashing until the indicator button is depressed. Such flashing of a status indicator can alert the operator to the fact that the procedure is taking longer than anticipated. With such information in hand, the need for rescheduling can be anticipated before the situation becomes critical.

The real-time clock could also be used for automatic display of conflict indicia. If the signal button in Rm 3 has not been used to signify that "Doc a" has completed his task before 7:45, a conflict indicator can be made to

4,937,743

11

appear because Doc a is scheduled to be in Rm 1 working on Case abc at that time.

Status indicia may, but need not be communicated according to a predetermined sequence. In some procedures sequencing may not be important with respect to some or all of the stages of the procedure. When sequencing is imperative, the method and system of the present invention can be made to operate in a programmed mode. Each time a milestone is reached, all that the operator need do is depress a button. Each button press signals the reaching of the next milestone in a predetermined sequence.

In other applications, however, a manual mode might be more suitable. In the manual mode, the operator, by movement of the cursor or some other mechanism, first identifies the stage or milestone and then signals its completion. Thus, the operator could, in the manual mode, signal completion of stage 3 before stage 2.

Hybrids of the two modes may also be employed. Thus, even in the manual mode, predetermined sequences or rules may be established. For example, it may be necessary that step 3 be completed before step 4 is begun, but steps 1, 2 and 5 may proceed without regard to the timing of steps 3 and 4. Conflict indicia can be made to signal the violation of any sequence rules.

As can be appreciated, many installations are likely to want the flexibility of selecting either the programmed mode, the manual mode or the hybrid mode. The present invention readily accommodates such flexibility.

Frequently it is important that a record be kept of what happened and when. This can be accomplished according to the present invention simply by recording (e.g. in the memory or on a printout) the time when each milestone is reached. Normally, a real time record, using the real-time clock, would be made each time a milestone signal is sent. However, often, contemporoueous signalling is impossible. For example, during surgery, no one may be free to depress the signal button at the time a milestone is reached. Therefore, the present invention also contemplates means for manual entry of the time when an event occurred. It also contemplates use of appropriate indicia, usually on the historical record, of whether the time recorded was real-time or was manually entered.

The historical record also provides for accountability. From that record it can readily be determined what sequence was followed, when each milestone was reached and which resources were involved, to reschedule the resources involved in the second tier conflict and only if no conflicts result from that second rescheduling, to proceed to reschedule at both the first and second tiers. Otherwise, the rule would require abandoning the effort to reschedule.

The instant invention also contemplates the use of status indicia to predict unanticipated availability of resources. For example, if stage 2 in "Case abc," not expected to be finished until 7:50, has been completed before 7:40, the status indicator bar (FIG. 1A) can be displayed in a different contrasting color. The appearance of such a color bar on the display would alert the operator to anticipate availability of operating room 1 (and the other resources involved in "Case abc") earlier than originally expected.

FIG. 2 represents a dynamic display of information based on real-time information, as contrasted with the static prospective information that is reflected in FIG 1. On FIG. 2, the time now is indicated by "(tn)" and an arrow.

12

FIG. 2 shows a conflict between "Case abc" and "Case def" for surgical operating room 1, as denoted by conflict indicator C-1. This conflict could have arisen as a result of the operator, reacting to status indicia, revising the anticipated completion time of "Case abc." Alternatively, it may have been triggered by the passage of time (as indicated by the real-time clock) beyond 8:45 without a signal having been received that "Case abc" has been completed.

It should be noted that the revision of the scheduled completion of "Case abc" also causes a conflict in the schedule of "Doc a" who is supposed to be in "Rm 4" at 9:00. Conflict indicator C-2 reflects that conflict.

The system can also be made to take certain actions automatically. For example, if a piece of equipment must be warmed up for a predetermined period of time before use, the method of the instant invention would encompass having the system energize that piece of equipment when a particular milestone in the procedure has been completed. Similarly, in an industrial setting, the system could automatically cut purchase orders or open molds when certain predetermined milestones are reached.

The method of this invention also contemplates a rule based system wherein the detection of certain conflict indicia would cause automatic rescheduling of some resources. To illustrate, assume that in FIG. 1, there must be 15 minutes between completing Case abc and beginning Case def. If a signal has not been sent by 8:50 that Case abc is over, a rule could be established that would automatically reschedule Case def to begin at 9:15. The rule could also require checking the schedules of all the resources involved in Case def before rescheduling.

If, upon checking those Case def-related schedules no new conflicts are detected, the rescheduling would be done and notice of the change communicated automatically to the people affected. This could be done, for example, by having the system call the office of the surgeon scheduled to do Case def and, by use of a voice synthesizer, report the new schedule.

If the rescheduling of Case def is found to provoke other conflicts, the system could be designed so as not to do the rescheduling, but instead merely to give notice of the first conflict. That notice could be by means of a visual display, by the sounding of a distinctive note or the like. Another possibility would be to have the system try:

Ideally, conflict indicia would be displayed regardless of which resource or resources are involved. For example, even if the unexpected delay in completing "Case abc" did not cause a conflict in use of Room 1, it may have caused a conflict in the schedule of the anaesthesiologist involved in that case. If the anaesthesiologist's schedule had been placed in the data base, a search of the data base in response to rescheduling of the completion of "Case abc" would reveal that the anaesthesiologist's extended involvement in "Case abc" conflicts with his other obligations. As a result, yet another conflict indicator C-3 would be displayed. Conflict indicator C-3 could be non-specific, in that it would merely reflect the existence of a conflict but not identify the source. Conflict indicia C 1 and C 2, on the other hand signify not only the existence of a conflict but also identify one or more of the resources involved. Alternatively, C-3 could be made specific by use of color, position, shape etc.

4,937,743

<table>
<tr><td>13</td><td>14</td></tr>
</table>

It should be noted that identifiers "Case abc" and "Case ghi" under rooms 1 and 2 have been moved from within the cells to above them to indicate that those cases are currently proceeding in their respective operating rooms. The identifier "Case abc" under "Doc a" has also been moved to above the cell to reflect that Doc a is currently involved in that case.

Under Rm. 1 on FIG. 2, it can be seen that the scheduled completion time has been changed from 8:45 to 9:15, representing a delay (d) of 30 minutes. The cross-hatching under Rm. 1 shows that Case def, originally scheduled to begin at 9:00, will not begin until 9:30.

The locations of the identifiers under Rm. 3 immediately reveal that Cases klm, mno and prs have been completed and that Case tuv has not yet begun. It can also be seen that Case mno was originally scheduled to end at 8:15 but did not actually end until 8:30.

Still on FIG. 2, under "Doc. a", it can be seen that his involvement in Case abc did not end at 8:15 as planned, but is still in progress at the current time and is now scheduled to end at 9:15.

Finally, it can be seen that Mic. X, initially scheduled to be moved into Rm. 1 at 8:45, perhaps to permit set-up and calibration in advance of Case def, has not yet been moved in, and is not scheduled for that move until 9:15.

FIG. 3 is an historical display of how the primary resources were actually used relative to the schedule shown in FIG. 1. In FIG. 3, it can be seen that "Case abc" which had been planned to be completed at 08:45 (dashed line in "Case abc" cell), was not completed until about 09:05 and "Case def" started immediately thereafter. Conflict indicator C-4 (double cross-hatching) shows that "Case def" did not begin at the time anticipated. Similarly, conflict indicia show that "Doc a" did not begin the procedure in Rm 4 until 9:05 (C-5) because he was delayed by Case abc.

In the embodiment of FIG. 3, indicia in the form of single cross-hatching, are used to show changes that were made from the prospective schedule. The opposite direction cross-hatching of the Case tuv cell denotes a cancelled procedure.

It should be noted that neither FIG. 1 nor FIG. 3 shows a current time indicator. In order to keep the two types of displays from being confused, some notation would normally be used to differentiate one from the other. One such method would be to use one background color for prospective displays and a contrasting background color for historical displays. Such use of contrasting colors could also make superfluous a separate current time flag. On the dynamic display, the passage of time could be shown by having the interface line between the two colors move inexorably downward.

The display of FIG. 2 contemplates showing time passing by having the time arrow (tn) move down the screen, with the cells remain stationary. As those skilled in the art will readily appreciate, the time line can be held stationary while the cells move. One such display is reflected on the left half of FIG. 4. As time passes, the digital clock changes and the cells index upwardly.

FIG. 4 also shows how, in accordance with the instant invention, a graphical display may be combined with and supplemented by a real time textual display. As one cell passes off the screen, the textual display showing current utilization of that resource would automatically change to reflect the new circumstance.

FIG. 4 shows the situation at 8:05. FIG. 5 shows the situation with respect to the same operating rooms at 11:25. It should be noted that the time relationships between cells have changed between 8:05 (FIG. 4) and 11:25 (FIG. 5). This has occurred because embedded in the cells in this embodiment are milestone markers (M). The cells stop at each of these milestone markers until indication is received that the milestone has in fact been reached. The cell then resumes indexing upwardly. In this embodiment, the combination of milestone markers and cell movements constitute the status indicia.

FIG. 6 shows a display of a prospective schedule for the beginning of the month of June 1987 for Projects X and Y and Resources 123, 223 and 224. Project X has two phases which can be partially overlapping. Project Y has three phases none of which can overlap. Resources 123, and 223 are used in phases 1 and 2 of Project Y. Resource 224 is used twice during phase 1 of Project X and in phase 3 of Project Y.

FIG. 7 shows the dynamic or actual events as of June 8, 1987 with respect to the schedule shown in FIG. 6. Phase of Project X did not begin on time and ended late. The late ending is indicated by arrow t in the "phase one" cell. That delay has caused a conflict to arise because Resource 224 cannot be used concurrently in phase 1 of Project X and phase 3 of Project Y. This conflict is indicated by indicia C-6, C-7 and C-8. The time is indicated by a screen background color change. The interface between the two colors is the current time (t).

Although Project X and Resource 224 used in Project X have been rescheduled on FIG. 7, Project Y phase three and the use of Resource 224 in "Y" three have not yet been rescheduled.

While some overlap between phases one and two of Project X was anticipated, the delay in completion of phase one resulted in too great an overlap, and the start of phase two had to be delayed as a result. This is indicated by shading in the Project X, phase two cell.

FIG. 8 shows a display relating to FIG. 1 which has been reconfigured to include additional information about some of the cells.

As discussed above, the method and system of the instant invention may be menu driven. The nature of the menus and submenus, the information to which they permit access and the other functions they make available will vary depending upon the application. Some menus can be used merely to call up information from the data base. Other menus can be used to modify the display format. How such menus can be used and the kinds of menus which can be made available are as varied as the applications to which the invention may be applied and the creativity of those who use the invention.

The conventional use of pop up windows allows additional information to be displayed beyond that which can conveniently be placed on a graphical display. In FIG. 9 a pop up window has been called up in order to view detailed information concerning a particular case.

The display can also be used to trace the location of a specific physician or patient. The data base in a hospital system could also allow the display of the availability of other resources, unrelated to the surgical suite. For example, a hospital system could be designed to identify the present and future occupants of rooms so that individuals could be easily located and timely information retrieved as to availability of rooms.

Although it is anticipated that, at least in the early applications of the instant invention, inputting of information will normally be through key boards and/or

4,937,743

**15**

signal switches, it should be understood that the invention is not limited to use of such devices. Depending upon the particular application, telephone, radio, microwave, infrared and other devices and methods of transmitting signals could be used. In an industrial setting where dynamic scheduling depends upon personnel in the field arriving and departing from a myriad of different locations, telephones or "beepers" could be used to input current information. Similarly, conflict indicia or rescheduling information could automatically be communicated to field personnel by means of "beepers" or other such devices.

While it is believed that a cathode ray tube display is most suitable for use in practicing the instant invention, the term "display" has been used herein much more generically. Depending upon the particular application, hard copy, e.g., a paper print-out, might be an acceptable display. Similarly, an array of incandescent bulbs might be adequate. Other, more or less sophisticated displays could also be employed.

Finally, the above-described embodiments of the invention are intended to be illustrative only. Numerous alternative embodiments may be devised by those skilled in the art without departing from the spirit and the scope of the following claims.

I claim:

1. A method of prospectively planning utilization of a multiplicity of related resources using a computer having a memory, including the steps of:

    identifying some of said resources as being primary, and other resources as being secondary;

    establishing temporal relationships between at least some of said resources;

    creating a data base of information about at least one of said resources, at least some of which information is independent of said temporal relationships between resources;

    prospectively scheduling utilization of at least some of said primary resources and at least some of said secondary resources;

    displaying, in graphical fashion, the prospectively scheduled utilization of at least some of said resources;

    determining whether any of said scheduled utilizations of one of said resources is incompatible with any of the information in said data base; and

    communicating, by means of conflict indicia, the existence of any said incompatible scheduled utilizations.

2. The method of claim 1 wherein said display is a transient optical display and wherein said communication of at least one of said conflict indicia is accomplished by having same appear on said display.

3. The method of claim 2 further comprising the step of displaying status indicia.

4. The method of claim 2 wherein at least two different types of conflict indicia are displayed.

5. The method of claim 4 wherein one of said types of conflict indicia identifies a temporal conflict and another conflict indicia identifies an impermissible use as determined by a search of said data base.

6. The method of claim 4 wherein at least some of said conflict indicia identify the type of conflict involved.

7. The method of claim 2 further comprising the steps of displaying utilization information about at least some primary resources;

    displaying utilization information about at least some of said secondary resources; and

**16**

    displaying a relationship between at least one of said primary resources to at least one of said secondary resources.

8. The method of claim 2 wherein there is displayed simultaneously at least one primary resource and at least one secondary resource.

9. The method of claim 2 wherein the display of information is dynamic in that it reflects status information in real time.

10. The method of claim 2 wherein at least one of said conflict indicia identifies a real conflict and at least one other of said conflict indicia identifies an apparent conflict.

11. The method of claim 2 wherein said data base can be interrogated to cause a display of information about at least one of said resources.

12. The method of claim 1 further comprising the steps of:

    obtaining information representing actual utilization of at least one of said resources at a point in time subsequent to the first scheduled utilization of said resource;

    determining whether said actual utilization is incompatible with any of said temporal relationships or with any information stored in said data base; and

    communicating, by means of conflict indicia, the existence of any such incompatible utilizations.

13. The method of claim 1 further comprising the step of determining whether any of said scheduled utilizations is incompatible with any of said temporal relationships.

14. The method of prospectively planning utilization of a multiplicity of related resources using a computer having a memory, including the steps of:

    creating a data base of information about at least some of said resources, at least some of which data is independent of temporal relationships between resources;

    including in said data base permissible and impermissible uses of at least some of said resources;

    prospectively scheduling utilization of at least some of said resources;

    displaying, in graphical fashion, the prospectively scheduled utilization of at least some of said resources;

    searching said data base to determine if any of said scheduled utilizations constitutes an impermissible use; and

    communicating, by means of conflict indicia, said impermissible scheduled utilizations.

15. The method of claim 1 or 14 wherein communication of at least some of said conflict indicia is by means of sound.

16. The method of claim 1 or 14 wherein communication of at least some of said conflict indicia is by means of light, radio waves or other electromagnetic radiation.

17. The method of claim 14 wherein said display is a transient optical display and wherein said communication of at least one of said conflict indicia is accomplished by having same appear on said display.

18. The method of claim 17 wherein said prospectively scheduled utilization is reflected on said display in the form of scheduling indicia.

19. The method of claim 18 further comprising the steps of:

    obtaining information representing actual utilization of at least one of said resources at a point in time

4,937,743

17

subsequent to the first scheduled utilization of said resource;

communicating said actual utilization information by having same appear on said display in the form of status indicia.

20. The method of claim 19 further comprising the steps of:

determining whether said actual utilization is inconsistent with any prior scheduled utilizations of any resource;

rescheduling at least one of said inconsistent previously scheduled utilizations.

21. The method of claim 19 further comprising the step of recording said actual utilizations.

22. The method of claim 14 further comprising the step of communicating at least two different types of conflict indicia.

23. The method of claim 22 wherein one of said conflict indicia identifies a temporal conflict and another of said conflict indicia identifies an impermissible use as determined by a search of said data base.

24. The method of claim 14 wherein said data base is comprised of a permanent or semi-permanent data base and a transitory data base.

25. A system for prospectively planning utilization of a multiplicity of resources, at least some of which are interrelated, comprising:

a computer having a memory;

a data base stored in said memory containing information about at least some of said resources, at least some of which information is independent of temporal relationships between resources;

a set designated as primary resources and a set designated as secondary resources;

scheduling means for prospectively scheduling utilization of at least some of said primary resources as a function of time;

display means for displaying in graphical form, the prospectively scheduled utilization of at least some of said resources;

means for comparing at least one of said scheduled utilizations with at least one other scheduled utilization or with information in said data base, to detect incompatibilities; and

means for communicating, by use of conflict indicia, the existence of detected incompatibilities.

26. The system of claim 25 wherein said display means are characterized by being transient.

27. The system of claim 26 wherein at least some of said scheduling information is made to appear in textual form on said display.

28. The system of claim 27 wherein at least some of said conflict indicia are made to appear on said display.

29. The system of claim 28 wherein said scheduling information reflects planned utilization of at least some of said primary resources as a function of time.

30. The system of claim 29 wherein at least some of said scheduling information incorporates information about utilization of at least some of said secondary resources.

31. The system of claim 28 wherein at least some of said conflict indicia appear on said graphical display.

32. The system of claim 25 wherein at least some of said conflict indicia appear on said graphical display.

33. The system of claim 25 wherein at least two different kinds of conflict indicia are employed to communicate the existence of at least two different kinds of incompatibilities.

18

34. The system of claim 33 wherein at least one of said conflict indicia identifies a temporal incompatibility and at least one other conflict indicia identifies an incompatibility as determined by a search of said data base.

35. A system for prospectively scheduling, periodic monitoring and managing utilization of a plurality of resources, at least some of which are interrelated, comprising:

a computer having a memory;

a data base stored in said memory, containing information about at least some of said resources; at least some of which information is independent of temporal relationships between resources;

a set designated as primary resources and a set designated as secondary resources;

scheduling means for prospectively scheduling utilization of at least some of said primary resources as a function of time;

display means for displaying in graphical form, the prospectively scheduled utilization of at least some of said resources;

means for communicating at least some of said prospectively scheduled utilization information through use of graphically displayed scheduling indicia;

means for comparing at least one of said scheduled utilizations with at least one other scheduled utilization or with information in said data base to detect incompatibilities;

means for communicating, by use of conflict indicia, the existence of detected incompatibilities;

means for collecting information about actual utilization of at least one of said primary resources subsequent to the first scheduled use of a resource; and

means for modifying at least one of said scheduled utilizations to reflect variances between said actual utilization and said prospectively scheduled utilization.

36. The system of claim 35 further comprising means for inputting the actual status of utilization of at least one of said primary resources at a point in time subsequent to the initial planned utilization of at least one of said primary resources.

37. The system of claim 36 further comprising means for collecting information about actual utilization of at least one of said primary resources at a point in time subsequent to the first prospectively scheduled utilization thereof and means for communicating said actual utilization information by use of status indicia.

38. The system of claim 37 further comprising means for comparing said actual utilization of at least one of said primary resources with the prospectively scheduled utilization of said resource and means for communicating, through use of status indicia, the results of said comparison.

39. The system of claim 37 wherein said means for collecting information about actual utilization of resources includes real time clock means.

40. The system of claim 37 wherein said display means includes means for displaying at least one of said conflict indicia or said status indicia.

41. The system of claim 37 further comprising means for dynamically displaying, by use of said status indicia, the status of utilization of at least one of said resources in real time.

42. The system of claim 36 wherein said means for inputting said actual utilization status of resources includes real time clock means.

4,937,743

**19**

**43**. The system of claim 36 further comprising means for recording the time of said inputting of said actual status utilization data.

**44**. The system of claim 36 further comprising means for recording the time of said actual status utilization.

**45**. The system of claim 25 or claim 35 wherein said data base is comprised of a semi-permanent data base and a transitory data base.

**46**. The system of claim 35 wherein said means for collecting said actual utilization information includes real-time clock means.

**47**. The system of claim 46, 41, or 39 wherein said real time clock means is made to appear concurrently with said graphical display of the prospectively scheduled utilization of at least some of said resources.

**48**. The system of claim 35 further comprising means for detecting modification-caused incompatible utilizations and communicating said detected modification-caused incompatibilities by use of conflict indicia.

**49**. The system of claim 48 wherein said display means includes means for displaying at least one of said conflict indicia or said status indicia.

**50**. The system of claim 35 wherein said display means are characterized by being transient in nature.

**51**. The system of claim 35 wherein said modifying means includes means for automatically altering at least one of said scheduled utilizations in response to detection of at least one modification-caused incompatibility.

**52**. The system of claim 35 wherein at least some of said actual utilization information appears on said graphical display.

**53**. The system of claim 32, 31 or 52 wherein said graphical display is made to appear concurrently with a textual display of information about utilization of at least some of said primary or secondary resources.

**20**

**54**. The system of claim 26 wherein information stored in said data base about at least one of said resources can be accessed and made to appear on said display.

**55**. The system of claim 35 wherein at least one of said conflict indicia is communicated by graphical display thereof.

**56**. The system of claim 26 or 55 further comprising
   means for displaying utilization information about at least some of said primary resources;
   means for displaying utilization information about at least some of said secondary resources; and
   means for displaying a relationship between at least one of said primary resources and at least one of said secondary resources.

**57**. The system of claim 26 or 55 further comprising means for simultaneously displaying information about at least one primary resource and at least one secondary resource.

**58**. The system of claim 26 or 55 further comprising means for dynamically displaying on said transient display, status information about the utilization of at least some of said resources in real time.

**59**. The system of claim 26 or 55 wherein at least one of said conflict indicia identifies a real conflict and at least one other conflict indicia identifies an apparent conflict.

**60**. The system of claim 26 or 55 further comprising means for interrogating said data base to cause a display of information about one of said resources.

**61**. The system of claims 26 and 55 wherein at least two different kinds of incompatibilities can be detected and wherein at least some of said conflict indicia identify the nature of the incompatibility associated therewith.

\* \* \* \* \*

# EXHIBIT B



Edward J. Treska
Vice President, Licensing
Telephone (949) 480-8318
Fax (949) 480-8391
Email: etreska@acaciares.com

*Via FedEx*

MAR 2 4 2006

March 23, 2006

Ms. Judy Faulker
President and CEO
Epic Systems Corporation
1979 Milky Way
Verona, WI 53593

### Re: U.S. Patent No. 4,937,743

Dear Ms. Faulker,

Acacia is a publicly traded (Nasdaq:ACTG) patent licensing company located in Newport Beach, California (www.acaciatechnologies.com). Acacia controls over 40 patent portfolios in various technology disciplines. Acacia, through its subsidiaries, licenses and enforces patents and shares the revenues with inventors that do not have the resources to commercialize their patented inventions or take action against infringing market activity

### The '743 Patent

Our subsidiary company, Resource Scheduling Corporation, owns the rights to license and enforce U.S. Patent No. 4,937,743 entitled "Method and System For Scheduling, Monitoring And Dynamically Managing Resources (the "'743 Patent"). In 1985, the inventor of the '743 Patent, Dr. William Rassman, founded and ran IntelliMED Corporation to develop advanced software and methods for enterprise resource management. The revolutionary aspects described in the '743 Patent are applicable and are used in a variety of industries, including the healthcare industry, where resource management is an important function of business operations.

The '743 Patent describes methods for scheduling, monitoring, and managing multiple resources using a computer system. These methods apply to resource scheduling solutions like those offered by Epic Systems to the healthcare industry. We have reviewed descriptions and information about Epic Systems' Cadence product and believe the manufacture and sale of this product is covered under the '743 Patent and requires a license. A sample claim chart showing our analysis of Claim 1 of the '743 Patent applied to Cadence is enclosed. Additional software products and solutions offered by Epic Systems, including Epic's Optime OR Scheduler product, may also be covered by the '743 Patent.

Recently, Resource Scheduling Corporation initiated litigation against several companies in the healthcare industry for infringement of the '743 patent. This litigation is pending in Texas Federal Court and we intend to add additional parties to the litigation that continue to manufacture and sell unlicensed products covered by the '743 Patent.

## Licensing Options

Acacia's preference is to license its intellectual property at reasonable rates and amicably resolve patent infringement matters  To do so, we provide alleged companies and infringers with sufficient materials up front to accelerate the necessary evaluation of any infringement claims. To assist in your evaluation, I have enclosed (i) a copy of the '743 Patent; (ii) a copy of the previously referenced claim chart; and (iii) a CD containing the file history of the '743 Patent. This should enable you and your patent counsel to quickly assess the allegations made in this letter

Acacia is prepared to license the '743 Patent to your company under very favorable terms at this point in our licensing and enforcement campaign.  We propose a fixed payment royalty for past sales of covered products and either an ongoing royalty or fixed fee for future sales of covered products through the expiration of the '743 Patent, which is in September 2007 Typically, the royalty rates we offer will increase over time and as our litigation progresses

Within 30 days, I would like to set up an appointment to review your findings and discuss licensing options in more detail.  In the interim, please contact me if you have any questions

I look forward to your earliest possible response.

Thank you.

Sincerely,

Edward J. Treska

enclosures