UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EPIC SYSTEMS CORPORATION,

        Plaintiff,

    v.                                      Civil Action No. 06-255

ACACIA RESEARCH CORPORATION and
RESOURCE SCHEDULING CORPORATION,

        Defendants.

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND IN THE ALTERNATIVE MOTION TO TRANSFER VENUE**

OF COUNSEL
Nicholas J. Seay
James R. Cole
Anthony A Tomaselli
Kristin Graham Noel
Quarles & Brady LLP
One South Pinckney Street
Suite 600
Madison, Wisconsin 53703
(608) 251-5000
(608) 251-9166

Robert H. Richards, III (#706)
Jeffery L. Moyer (#3309)
Anne Shea Gaza (#7539)
rrichards@rlf.com
moyer@rlf.com
gaza@rlf.com
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
302-651-7701
*Attorneys for Plaintiff Epic Systems
Corporation*

Dated: May 23, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STATE OF PROCEEDINGS.................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................................. 2

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT..................................................................................................................... 5

    I.    The Court Has Jurisdiction To Hear This Matter Because The
        Totality Of The Circumstances Created A Reasonable Apprehension
        Of Suit ................................................................................................................... 5

    II.   Acacia Should Not Be Dismissed ...................................................................... 10

    III.  The Court Should Exercise Its Jurisdiction ...................................................... 11

    IV.  Transfer Of Venue Is Not Proper ...................................................................... 13

CONCLUSION................................................................................................................ 17

RLF1-3017103-1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Argos v. Orthotec, LLC*, 304 F.Supp.2d 591 (D. Del. 2004) ................................ 10, 13, 14, 15

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
   846 F.2d 731 (Fed. Cir. 1988) ......................................................................... *passim*

*B.P. Chems. Ltd. v. Union Carbide Corp.* 4 F.3d 975 (Fed. Cir. 1993) ............................ 11

*Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352 (Fed. Cir. 2004) ............... 11, 12

*Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) .................................. 11

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996) ..................................... *passim*

*Fina Research S.A. v. Baroid Ltd.*, 141 F.3d 1479 ........................................................ 6

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) ....................... 5

*Phillips Plastics Corp. v. Kato*, 57 F.3d 1051(Fed. Cir. 1995); ........................... 6, 8, 11

*Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed. Cir. 1992) .................................. 5, 6, 9

*Sirius Satellite Research, Inc. v. Acacia Research Corp.*,
   No. 05 Civ. 7495, 2006 U.S. Dist. Lexis 3900 (S.D.N.Y. Jan. 30, 2006) ............... 6, 7, 8, 10

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 2005) ........................... 9

*Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600(D. Del. 2004) .............. 13, 14

## Statutes

28 U.S.C. § 1404(a) ....................................................................................... 13

28 U.S.C. § 2201 ............................................................................................ 5

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff, Epic Systems Corporation ("Epic"), hereby opposes Defendants, Acacia Research Corporation's ("Acacia") and Resource Scheduling Corporation's ("RSC") (jointly "Defendants"), Motion to Dismiss and in the Alternative Motion to Transfer Venue ("Motion"). The Court should deny Defendants' Motion in its entirety.

Epic filed this declaratory judgment action on April 19, 2005, in this Court, alleging, among other things, that Epic has not infringed any valid and enforceable claim of U.S. Patent No. 4,937,743 ("the '743 Patent"), and asking the Court for declaratory judgment. Defendants filed their Motion on May 9, 2006, and have yet to answer Epic's Complaint.

This is Plaintiff's Answering Brief in Opposition to Defendants' Motion.

## SUMMARY OF THE ARGUMENT

1.    The Court has jurisdiction to hear this action because Epic had a reasonable apprehension of suit at the time Epic filed this matter.

2.    The Court should also deny the Motion with respect to Acacia specifically, because Defendants have not provided any evidence to show that Acacia does not have an interest in the patent at issue, and because, as a result of the language used by Defendants in their communication with Epic, Epic had a reasonable apprehension of litigation from Acacia at the time of filing suit.

3.    The Court should exercise its jurisdiction because Epic's claim presents the very situation that the Declaratory Judgment Act was created to address, and because Defendants have provided no well-found reason for the Court to decline jurisdiction.

4.    The Court should deny Defendants' Motion with respect to venue as Defendants, two Delaware corporations, have failed to articulate a compelling reason for a transfer of venue to the Eastern District of Texas sufficient to overcome Epic's choice of forum.

RLF1-3017103-1

## STATEMENT OF FACTS

### A.    The Parties

Epic is a Wisconsin corporation with its principal place of business in Wisconsin.  (D.I.

1, Complaint, ¶ 1).  Acacia and RSC are Delaware corporations with principal places of business

in California.  (*Id.* ¶¶ 2, 3).  Acacia is in the business of purchasing patents from third parties and

licensing or enforcing them.  (D.I. 9, Appendix to Defendants' Opening Brief, at A-38).

### B.    Defendants' Threat To Sue Epic

Epic received a letter from Acacia on March 24, 2006.  (D.I. 1, Complaint, ¶ 8).  In this

letter, Mr. Treska, Vice President of Licensing for Acacia, states that Defendants believe that

Epic's "Cadence" product is covered by the'743 Patent, and that other Epic products may be

covered by the '743 patent.  (*Id.* at Ex. B).  The letter alleges that the '743 Patent is owned by

RSC, a subsidiary of Acacia.  (*Id.*).

This letter goes on to state:

> Recently, Resource Scheduling Corporation initiated litigation
> against several companies in the healthcare industry for
> infringement of the '743 patent.  This litigation is pending in Texas
> Federal Court and we intend to add additional parties to the
> litigation that continue to manufacture and sell unlicensed products
> covered by the '743 Patent.

(*Id.*) (emphasis added).

After mentioning the possibility of licensing the '743 patent, Acacia references a "sample

claim chart" enclosed with the letter and states that "[t]his should enable you and your patent

counsel to quickly assess the allegations made in this letter."  (*Id.* (emphasis added); Declaration

of Kenneth J. Hansen ("Hansen Decl."), at Ex. 2).  Further, Acacia informed Epic that Acacia

provides such information to "alleged companies and infringers," and that the chart was provided

to Epic to "assist" in Epic's "evaluation of any infringement claims."  (D.I. 1, Complaint, Ex.

B). This chart compares specific features of Epic's Cadence product with Claim 1 of the '743 Patent. (*Id*). Finally, Acacia informed Epic that "[t]ypically, the royalty rates we offer <u>will increase as our litigation progresses</u>." (*Id*) (emphasis added).

In response to this letter, on April 19, 2006, Epic filed a suit against Acacia and RSC in this Court, alleging, among other things, that Epic has not infringed any valid and enforceable claim of the '743 Patent, and asking the Court for declaratory judgment. (*See id*.).

## ARGUMENT

**I.    The Court Has Jurisdiction To Hear This Matter Because The Totality Of The Circumstances Created A Reasonable Apprehension of Suit.**

A potential defendant may sue preemptively for declaratory relief under 28 U.S.C. § 2201 when the claim that would be asserted against it arises under federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1 (1983). However, there must first be an actual case or controversy. The actual case or controversy requirement under 28 U.S.C. § 2201 is the same as the "case or controversy" requirement under Article III of the Constitution. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) (*citing Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-240 (1937)). To constitute an actual controversy in the patent context, a plaintiff must show that it had a reasonable apprehension of being sued.[1] *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992). Courts examine the totality of the circumstances at the time a lawsuit is filed when deciding whether an actual case or controversy exists. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988).

The Court should deny Defendants' Motion because Defendants' conduct created a reasonable apprehension of suit. "To put a putative infringer in reasonable apprehension of suit <u>does not require an express charge</u> of infringement and threat of suit; rather, such apprehension may be induced by subtler conduct if that conduct rises '<u>to a level sufficient to indicate an intent</u> <u>[on the part of the patentee] to enforce its patent,'</u> i.e., to initiate an infringement action." *EMC,* 89 F.3d at 811(emphasis added) (*quoting Shell Oil,* 970 F.2d at 887). While the test for

---

[1] Epic must also show that, at the time of bringing suit, Epic either produced the allegedly infringing product or had prepared to produce the product. *Shell Oil,* 970 F.2d at 888 n.2. Defendants have not challenged the fact that Epic produced the allegedly infringing product. (*See* D.I. 8, Defendants' Opening Brief). Further, Defendants' letter to Epic refers to Epic's "Cadence" product and "[a]dditional software products and solutions offered by Epic Systems, including Epic's Optime OR Scheduler product" that Defendants claim may be covered by the '743 Patent. (D.I. 1, Complaint, Ex. B). As such, this requirement has been met by the inclusion of Defendants' letter with the Complaint.

reasonable apprehension of suit looks to the totality of the circumstances, certain factors are commonly considered when making the determination of reasonable apprehension of suit, including the language used by the patentee (*see, e g., Phillips Plastics Corp  v  Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1052-53 (Fed. Cir. 1995); *Shell Oil*, 970 F.2d at 888-89), and previous enforcement by the defendant of the <u>same</u> technology (*Arrowhead*, 846 F.2d at 738; *Sirius Satellite Research, Inc  v  Acacia Research Corp.*, No. 05 Civ. 7495, 2006 U.S. Dist. LEXIS 3900 (S.D.N.Y. Jan. 30, 2006) (D.I. 9, Appendix to Defendants' Opening Brief at A-42)).

*EMC* is illustrative of language in a letter that the Federal Circuit Court has found to create a reasonable apprehension of suit.  EMC filed a declaratory judgment action against Norand after a consulting company that was representing Norand sent a letter to EMC regarding a patent owned by Norand.  *EMC*, 89 F.3d at 809.  The letter referred to Norand's inclination to "turn the matter over to" Norand's litigation counsel "for action," and urged a "preliminary business discussion," that would "perhaps avoid[] this matter escalating into a contentious legal activity."  *Id.*  The Federal Circuit held that the language created a reasonable apprehension of suit in EMC, stating that "[a]n objective reader of [the letter] could only conclude that Norand had already decided EMC was infringing its patents and that Norand intended to file suit unless it could obtain satisfaction without having to sue."  *Id.* at 812; *see also Fina Research S.A.  v. Baroid Ltd.*, 141 F.3d 1479, 1482-83 (Fed. Cir. 1998) (citing *EMC* and stating that "[t]he law states that a letter threatening an infringement suit unless the alleged infringer ceases the offending activity satisfies" the reasonable apprehension test.).

The language contained in the letter Defendants sent to Epic is more threatening than the language in the letter that was sent to EMC.  First, the letter informs Epic of Defendants' belief that the manufacture and sale of Epic's Cadence product is covered by the '743 Patent, and that

-6-

other Epic products may be covered by the '743 patent. (D.I. 1, Complaint, Ex. B) Defendants then reference their attached "sample claim chart showing [Defendants'] analysis of how Claim 1 of the '743 Patent applied to Cadence." (*Id*; Hanson Decl., Ex. 1) Next, Defendants inform Epic that "Resource Scheduling Corporation <u>initiated litigation against several companies in the healthcare industry for infringement of the '743 patent</u>." (D.I. 1, Complaint, Ex. B) (emphasis added). Defendants then add that they "<u>intend to add additional parties to the litigation that continue to manufacture and sell unlicensed products covered by the '743 Patent</u>." (*Id.*) (emphasis added). Finally, Defendants state that "royalty rates we offer <u>will increase as our litigation progresses</u>." (*Id.*) (emphasis added).

Defendants' message is clear, Epic must stop manufacturing and selling the allegedly covered products and quickly negotiate a license with Defendants, or be sued for infringement. An objective reader of the letter could only conclude that Defendants had already decided that Epic was infringing its patents and that Defendants intended to add Epic to the Texas suit unless Defendants could obtain satisfaction without having to sue. *See EMC*, 89 F.3d at 812.

The "sample claim chart" referenced in and attached to the letter only strengthens that conclusion. The chart is an explicit charge of infringement, showing how specific features of Epic's Cadence product allegedly infringe Claim 1 of the '743 Patent. At the very least, the chart shows that Defendants have concluded that Epic has infringed the patent, and that Defendants are prepared to litigate the issue. As such, Epic had a reasonable apprehension of suit. *See id.*

Defendants point this Court to a recent decision from the Southern District of New York in which Acacia was involved, *Sirius*, 2006 U.S. Dist. Lexis 3900 (D.I. 9, Appendix to Defendants' Opening Brief at A-38), and urge the Court to dismiss this Case as the Southern

District of New York did in *Sirius*. (D.I. 8, Defendants' Opening Brief at 3). However, *Sirius* only highlights the deficiencies in Defendants' position.

In *Sirius*, there is no mention or suggestion that the letter Acacia sent to Sirius contained the threatening language that was contained in Acacia's letter to Epic. (*See* D.I. 9 at A-38 - A-43). Further, no evidence suggests that Acacia had a history of enforcing the same patent that Acacia alleged covered Sirius' product. (*Id.*) Indeed, the court in *Sirius* specifically noted "[o]nly where the patentee has 'demonstrated a readiness and inclination to sue [plaintiff] over its patents' by filing previous infringement actions to enforce the same technology is an apprehension of imminent litigation reasonable." 2006 U.S. Dist. Lexis 3900, at *18 (D.I. 9 at A-42 (emphasis added) (citing *Kos Pharms., Inc. v. Barr Labs., Inc.*, 242 F. Supp. 2d 311 (S.D.N.Y 2003)).

In the present case, Defendants' letter expressly states that Defendants have filed previous infringement actions to enforce the '743 patent, and also makes it clear that Defendants wanted Epic to be aware of the previously filed action. (D.I. 1, Complaint, at Ex. B). As such, there is no "smoke screen," only a company that refused to stand idly by while Defendants threatened to add that company to the existing suit. "The law does not require enterprises to keep their heads in the sand while a patentee picks them off one by one and at its leisure." *Arrowhead*, 846 F.2d at 738.

The cases cited by Defendants do not support Defendants' position that the language in the letter to Epic did not create a reasonable apprehension of suit. None of the cases cited by Defendants have similar language to the letter to Epic. *See, e.g., Phillips*, 57 F.3d at 1052 (patentee's letter to Phillips offers a license to Phillips "assuming that an appropriate agreement can be reached concerning the terms..."); *see also EMC*, 89 F.3d at 812, (noting that "[i]n

-8-

*Phillips Plastics*, however, the patentee had not stated <u>or even hinted</u> that it would pursue legal recourse if it were not satisfied with the outcome of the proposed licensing negotiations." (emphasis added)).

Defendants' reliance on *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 2005), is particularly misplaced. In that case, Teva, the declaratory judgment plaintiff, approached Pfizer, the patentee, claiming that Teva's proposed drug product did not infringe Pfizer's patent. *Id.* at 1326-27. Teva sued Pfizer after Pfizer <u>failed to respond</u> to Teva's claims. *Id.* at 1330. Further, Teva had "virtually conced[ed] that Pfizer will not bring immediate suit for infringement" of the patent against Teva. *Id.* at 1333. Clearly *Teva* is inapplicable to the case at hand.

Defendants also claim that use of "covered by" language and a history of enforcing patents do not create a reasonable apprehension of suit. (D.I. 8, Defendants' Opening Brief at 4). In addition to being a mischaracterization of Defendants' letter, Defendants argument is also "inapplicable in a case . . . where the patentee has made explicit references to the prospect of initiating legal action." *See EMC*, 89 F.3d at 812.

Finally, none of the cases cited by Defendants deal with the situation at hand--where the patentee has both explicitly referenced the prospect of litigation and has previously initiated litigation on the <u>same</u> patent it accuses the plaintiff of infringing. *See e.g.*, *Teva*, 395 F.3d at 1330 (no verbal or written communication to plaintiff); *Shell Oil*, 970 F.2d at 888 (no "corresponding or related litigation" identified). As discussed above, and as Acacia is undoubtedly aware, when a patentee has "demonstrated a readiness and inclination to sue [plaintiff] over its patents' <u>by filing previous infringement actions to enforce the same</u>

technology is an apprehension of imminent litigation reasonable." *Sirius*, 2006 U.S. Dist. Lexis 3900, at *18 (D.I. 9 at A-42); *see also Arrowhead*, 846 F.2d at 738.

Because of the language of Defendants' letter to Epic and the fact that Defendants admitted, in that letter, to enforcing the '743 Patent, Epic had a reasonable apprehension of suit. Accordingly, this Court has jurisdiction over Epic's claim for Declaratory Judgment, and Defendants' Motion should be denied.

## II.    Acacia Should Not Be Dismissed.

The Court should not dismiss Acacia from this action because the record currently supports that Acacia has an interest in the '743 Patent. In a motion to dismiss "the court must accept the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Argos v. Orthotec, LLC*, 304 F.Supp.2d 591, 593 (D. Del. 2004). In its Complaint, Epic alleges that Acacia owns the '743 Patent. (D.I. 1, Complaint, ¶ 8). Acacia has provided no evidence, such as an affidavit, that Acacia is without interest in the '743 Patent. Because the Court must accept the allegations in the Complaint as true, and because Defendants have provided no evidence that Acacia does not, in fact, have an ownership interest in the '743 Patent, the Court should not dismiss Acacia from this action.

Further, Acacia's letter to Epic clearly suggests that Acacia has an interest in the Patent. In the letter to Epic, Acacia states "we intend to add additional parties to the litigation" suggesting that Acacia does, in fact, have an interest in the patent and a corresponding intention to enforce it. (*See* D.I. 1, Complaint, Ex. B). In addition, as stated in *Sirius*, "Acacia is a corporation in the business of purchasing patents from third parties [and businesses] and licensing or enforcing them." 2006 U.S. Dist. Lexis 3900, at *2 (D.I. 9, Appendix to Defendants' Opening Brief at A-38)). Acacia's history of patent ownership and the language

from Acacia's letter shows that Epic had a reasonable apprehension of suit from both Acacia and RSC at the time Epic filed suit. Accordingly, the Court should deny Defendants' Motion.

**III.    The Court Should Exercise Its Jurisdiction.**

The Court should exercise its jurisdiction over this matter. As noted in *Capo, Inc. v. Dioptics Med. Prods., Inc*, 387 F.3d 1352, 1355 (Fed. Cir. 2004), "[t]here must be well-founded reasons for declining to entertain a declaratory judgment action." The Court must determine whether the action "serve[s] the objectives for which the Declaratory Judgment Act was created." *Id.* If so, "dismissal is rarely proper." *Id.* "The purpose of the declaratory [judgment] action is to permit a threatened party to resolve its potential liability." *Phillips*, 57 F.3d at 1053. Because of the Declaratory Judgment Act, competitors are no longer required to choose between "incurrence of a growing potential liability for patent infringement and abandonment of their enterprises." *Arrowhead*, 846 F.2d at 735. Finally, "when there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005).

In denying a patentee's request for the court to decline to exercise it jurisdiction, the court in *Capo* noted that "dismissal is rarely proper," and illustrated when dismissal would be proper by analyzing circumstances in which dismissal was sustained. 387 F.3d at 1355. The court explained that "[i]n *EMC* the court found that the declaratory [judgment] action was brought in order to gain an advantage in licensing negotiations, and deemed that an improper purpose. . . . In *B.P. Chemicals,* the court observed that dismissal of a declaratory judgment action was supported by the lack of joinder of necessary parties." *Id.* (citing *EMC*, 89 F.3d at 815; *B.P. Chems. Ltd. v. Union Carbide Corp.* 4 F.3d 975, 981 (Fed. Cir. 1993)). Without such reasons, "the accused infringer has the right to resolve the dispute." *Id.*

-11-

Deciding this case would serve the purposes of the Declaratory Judgment Act. Defendants have put Epic on notice that Defendants believe that certain Epic products are covered by the '743 Patent, and that Defendants "intend to add additional parties to the litigation that continue to manufacture and sell unlicensed products covered by the '743 Patent," and that "royalty rates we offer will increase as our litigation progresses." Hansen Decl. at Ex. 1. This letter has created the uncertainty and insecurity that the Declaratory Judgment Act was created to alleviate, and, because of the Act, Epic now has a third choice besides "incurrence of a growing potential liability for patent infringement and abandonment of their enterprise." *See Arrowhead*, 846 F.2d at 735; *B.P. Chems.*, 4 F.3d at 981.

Defendants, on the other hand, have provided no well-founded reason for the Court to refrain from exercising its jurisdiction, and this is not the rare case where dismissal is proper. *See Capo*, 387 F.3d at 1355. Further, Defendants' policy argument is based on a false premise-- that Defendants' letter could reasonably be interpreted as an offer to negotiate regarding a license, and not a thinly veiled threat of litigation. If Defendants truly "did not want to litigate but would rather engage in amicable license negotiations," Defendants could have avoided the threatening language contained in the letter, and could have avoided informing Epic of the other litigation involving the '743 Patent. Defendants' mischaracterization of the letter to Epic is simply a reiteration of its argument regarding reasonable apprehension of suit, and provides no basis for this Court to decline its jurisdiction. Accordingly, Defendants' Motion should be denied.

-12-

IV.    **Transfer of Venue is Not Proper.**

The Court should deny Defendants' Motion to transfer venue because Defendants have failed to identify <u>any</u> circumstances that justify transferring the action to the Eastern District of Texas.

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In interpreting the venue statute, this Court has stated that a plaintiff's choice of forum is to be given "substantial weight" and that it should "only transfer venue if the defendant truly is regional (as opposed to national) in character" and if "the balance of convenience of the parties and witnesses <u>strongly favors</u> the defendant." *Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 603 (D. Del. 2004) (emphasis added); *see also Argos*, 304 F. Supp. 2d at 598 ("[t]he court adheres to the notion that transfer is not to be liberally granted and the plaintiff's choice of forum is a paramount consideration."). [2]    Further, it is the defendant's burden to establish that venue should be transferred. *Tsoukanelis*, 337 F. Supp. 2d at 603. Finally, Delaware courts have recognized that Delaware has an interest in litigation regarding companies incorporated within its jurisdiction. *Id.* at 604.

Defendants do not contend that they are regional, as opposed to national, and do not even ask that this Court transfer the action to California, where Defendants have their principal places of business. (*See* D.I. 8, Defendants' Opening Brief). Defendants make no attempt to argue that it would be more convenient for witnesses to appear in Texas as opposed to Delaware, or that it

---

[2] As this Court has noted, because Epic did not choose its "home turf" as the forum, Epic's decision on forum is afforded less weight than if they had chosen a Wisconsin Court. However, it is unclear whether Wisconsin would have had jurisdiction over Defendants. Accordingly, Epic chose Defendants' "home turf," *i e* the state of Defendants' incorporation.

-13-

would be more convenient to present evidence in Texas, and as such, have not shown that litigating in Delaware presents an "unusual burden." *Tsoukanelis*, 337 F. Supp. 2d at 604. Indeed, because Defendants incorporated in Delaware, they cannot claim that litigating in Delaware would be "too burdensome." *See id.* at 604. Defendants' incorporation in Delaware also means that this Court has an interest in this litigation. *See id.*

The Third Circuit has provided a list of eleven factors to assist the district courts in determining whether a transfer of forum is proper. *Argos*, 304 F.Supp.2d at 597. However, Defendants have failed to address or even mention any of the factors provided by the Third Circuit.

Indeed, the only reason Defendants give for their request to transfer this case to the Eastern District of Texas is that Defendants have filed infringement claims against other companies with regard to the '743 patent in that court. (D.I. 8, Defendants' Opening Brief at 7-8). Defendants argue that somehow filing a claim against other companies is enough to trump Epic's choice of forum. (*See id.*). This Court rejected Defendants' theory under similar circumstances in *Argos*.

In that case, Defendant, Orthotec, a Delaware company with its principal place of business in California, argued that the transfer to the Central District of California was proper because Orthotec had filed suit against a third company, Eurosurgical, in that court. *Argos*, 304 F.Supp.2d at 592, 598. Orthotec maintained that resolution of the California action would help resolve the current dispute with Argos. *Id.* at 592-93. This Court rejected this argument, noting that it was "not persuaded that the venue is more appropriate in California and believes that Orthotec is very likely motivated to transfer venue to the Central District of California because it is presently involved in the California Action there." *Id.* at 598. The Court also stated that it

"fails to see how the instant plaintiff Argos is in any way connected to this California Action" and that "the instant parties were not both involved in the California Action." *Id.* at 598 n.6. Accordingly, the Court denied the defendant's motion to transfer. *Id.*

Other than asserting that similar litigation concerning the '743 Patent is currently pending in Texas, Defendants have failed to show how Epic is in any way connected to that action. (*See* D.I. 8, Defendants' Opening Brief at 7-8). Further, Defendants provide no support for the proposition that the previous filing of an action against other parties provides a basis to transfer venue. (*See id.*)

Defendants claim that it would be "in the interests of justice and judicial economy" to address all issues concerning the '743 patent in one forum. (*Id.* at 8). However, Epic has pleaded that it has not "infringed . . . any valid and enforceable claim of the '743 Patent." (D.I. 1, Complaint, ¶ 10). The infringement analysis in this case will necessarily involve evidence regarding Epic's products and argument regarding how those specific products do or do not infringe the '743 Patent. There is no reason to believe that the other actions filed by Defendants which accuse other parties' products will involve similar evidence or analysis. Similarly, it is unclear whether the other actions filed by Defendants will include a validity analysis of the same claims of the '743 patent that this case will involve. Defendants simply have not shown that a transfer to the Eastern District of Texas is in the interests of justice or judicial economy, and as such, Defendants' motion should be denied.

Defendants are clearly forum shopping. Defendants are Delaware companies with principal places of business in California. Defendants have provided no link to the Eastern District of Texas other than the fact that the Eastern District of Texas is the forum that Defendants chose to sue others. Defendants are now trying to impose that choice on Epic.

-15-

Finally, it would be unfair to Epic to transfer the case to the Eastern District of Texas. Defendants' request should be denied. Defendants' next step will undoubtedly be an attempt to join Epic to the current Texas litigation. (*See* D.I. 1, Complaint, Ex. B ("litigation is pending in Texas Federal Court and we intend to add additional parties to the litigation...")). Epic would be prejudiced by late addition to the Texas action, which was filed over four months ago.

Accordingly, because Defendants have failed to show any potential burden from litigating this case in Delaware and because Defendants have failed to cite any support for its position that filing suit against other companies in another jurisdiction is a proper basis for transfer of venue, this Court should respect Epic's choice of forum and deny Defendants' motion to transfer venue

## CONCLUSION

For the above stated reasons, Plaintiff, Epic Systems Corporation, respectfully requests that the Court deny Defendants' Motion in its entirety.


OF COUNSEL
Nicholas J. Seay
James R. Cole
Anthony A Tomaselli
Kristin Graham Noel
Quarles & Brady LLP
One South Pinckney Street
Suite 600
Madison, Wisconsin 53703
(608) 251-5000
(608) 251-9166

Dated: May 23, 2006

*Anne Shea Gaza*

Robert H. Richards, III (#706)
Jeffery L. Moyer (#3309)
Anne Shea Gaza (#7539)
rrichards@rlf.com
moyer@rlf.com
gaza@rlf.com
Richards Layton & Finger
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
302-651-7701
*Attorneys for Plaintiff Epic Systems
Corporation*

-17-

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2006, I caused to be served by hand delivery the

foregoing document and electronically filed the same with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

Kathleen Jennings-Hostetter, Esquire
Karen V. Sullivan, Esquire
Oberly & Jennings
800 Delaware Ave., Suite 901
P.O. Box 2054
Wilmington, DE 19899-2054

I hereby certify that on May 23, 2006, I caused to be sent by Federal Express the

foregoing document to the following non-registered participant:

Jonathan T. Suder, Esquire
Edward E. Casto, Jr., Esquire
Christie B. Lindsey, Esquire
Friedman, Suder & Cooke
604 East Fourth Street, Suite 200
Forth Worth, TX 76102

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700