IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EPIC SYSTEMS CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 06-255-JJF |
| | § | |
| ACACIA RESEARCH CORPORATION | § | JURY TRIAL DEMANDED |
| and RESOURCE SCHEDULING | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN THE ALTERNATIVE MOTION TO TRANSFER VENUE

Kathleen M. Jennings (No. 913)
Karen V. Sullivan (No. 3872)
OBERLY, JENNINGS & RHODUNDA, P.A.
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899
(302) 576-2000
(302) 576-2004 (fax)

and

Jonathan T. Suder
Edward E. Casto, Jr.
Christie B. Lindsey
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400
(817) 334-0401 (fax)

Attorneys for Defendants Acacia Research
Corporation & Resource Scheduling
Corporation

Dated:  May 31, 2006

## TABLE OF CONTENTS

Table of Citations.................................................................................................................ii

I.      There Was No "Express Threat" to Epic ..................................................................1

II.     Even Looking at the "Totality of the Circumstances," Declaratory
        Judgment Jurisdiction Does Not Exist.....................................................................3

III.    Epic Has No Reasonable Apprehension That It Would or Could Be Sued
        for Patent Infringement by Acacia ...........................................................................5

IV.     Declining to Exercise Declaratory Judgment Jurisdiction Is Especially
        Appropriate Here.......................................................................................................6

V.      Alternatively, the Court Should Transfer this Action to the Eastern District
        of Texas.....................................................................................................................6

VI.     Conclusion ................................................................................................................8

## TABLE OF CITATIONS

### Cases

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988)......................................................................................6

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (Fed. Cir. 1996)............................................................................. 1-2, 5

*Filmtec Corp. v. Allied-Signal, Inc.*,
13 U.S.P.Q.2D 1979 (D. Del. 1989) .............................................................................7

*Fresenius USA, Inc. v. Transonic Sys., Inc.*,
207 F. Supp. 2d 1009 (N.D. Ca. 2001) ........................................................... 1, 4-6

*Minstar, Inc. v. Laborde*,
626 F. Supp. 142 (D. Del. 1985) ...................................................................................7

*Rite-Hite Corp. v. Kelly Co.*,
56 F.3d 1538 (Fed. Cir. 1995).......................................................................................5

*Shell Oil Co. v. Amoco Corp.*,
970 F.2d 885 (Fed. Cir. 1992) ......................................................................................5

*Sirius Satellite Research, Inc. v. Acacia Research Corp.*,
No. 05 Civ. 7495, 2006 U.S. Dist. LEXIS 3900 (S.D.N.Y. Jan. 30, 2006) .............3

### Rules & Statutes

35 U.S.C. § 100(d) ..........................................................................................................5

35 U.S.C. § 281................................................................................................................5

## I.    There Was No "Express Threat" to Epic.

Defendants sent <u>a single letter</u> to Epic in an attempt to initiate licensing discussions concerning the '743 patent.  (See Complaint and its attached Ex. B; D.I. 1). Epic attempts to take Defendants' use of certain words in this letter, out of context, to bolster Epic's position.  (See Answering Brief pp. 3-4, 6-7; D.I. 14).  However, the courts have made it clear that "'[i]n the end, the question is whether the <u>relationship</u> between the parties can be considered a 'controversy,' and that inquiry does not turn on whether the parties have used particular magic words in communicating with one another.'" *Fresenius USA, Inc. v. Transonic Sys., Inc.*, 207 F. Supp. 2d 1009, 1012 (N.D. Ca. 2001) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996)) (emphasis added).

In Epic's attempt to color Defendants' licensing letter, Epic omits material portions, such as Defendants' "preference [] to license its intellectual property at reasonable rates and amicably resolve patent infringement matters," and enclosing "sufficient materials up front to accelerate the necessary evaluation…."  (See Hansen Decl., Ex. 1; D.I. 15).  Defendants' letter further offered to "license the '743 Patent to your company under very favorable terms…."  *Id*.  Such statements run contrary to an express threat of patent infringement and are insufficient to create an actual controversy.

Epic further argues that Defendants expressly charged infringement by including a sample claim chart with the licensing letter.  (See Answering Brief pp. 7; D.I. 14).  Epic contends that it had a reasonable apprehension of suit because "the chart shows that Defendants have concluded that Epic has infringed the patent, and that Defendants are

1

prepared to litigate the issue" and cites *EMC* as support. *Id*. *EMC* is inapposite for this proposition.

In *EMC*, the declaratory judgment defendant's letter referred to its "inclination to 'turn the matter over to' [its] litigation counsel 'for action,' and urged a 'preliminary business discussion,' 'perhaps avoiding this matter escalating into a contentious legal activity.'" *EMC*, 89 F.3d at 812. The court remarked that the letter's "language plainly suggested that [] management favored filing suit immediately and had to be persuaded by its consultant to hold off for a period of time necessary to seek a solution short of litigation." *Id*.

Here, Defendants' claim chart merely represents Defendants' reasons, based on "descriptions and information" known about Epic's product, as to why a license may be needed. (See, e.g., Hansen Decl., Ex. 1; D.I. 15). No party to a licensing negotiation is apt to agree to a license without discussing why that license may be necessary. The next logical step in such a negotiation would have been for Epic to evaluate the claim chart and convey its analysis and conclusion as to why it may or may not need a license. As discussed below, however, Epic did not even bother to respond. (See *infra*, section II). Instead, Epic ran off to the courthouse and filed this action.

Defendants' claim chart did not expressly charge infringement; instead, Defendants' included it to aid in Epic's licensing evaluation and as an opening point for discussion. (See, e.g., Hansen Decl., Ex. 1; D.I. 15). Epic's concern about the '743 patent is simply premature, and not the result of any "express threat" to Epic by Defendants.

**II.    Even Looking at the "Totality of the Circumstances," Declaratory Judgment Jurisdiction Does Not Exist.**

Under its "totality of the circumstances" argument, Epic ignores critical factors used to determine whether a reasonable apprehension of suit exists, including whether: (1) the allegations of infringement come from outside litigation counsel, rather than in-house counsel or business executives; (2) the patentee warned declaratory judgment plaintiff's customers of potential infringement; (3) the patentee has enforced the same patent or technology against other companies in prior litigation; and (4) the patentee gives declaratory judgment plaintiff an unfairly short period of time to respond to infringement allegation before taking other action. *Sirius Satellite Research, Inc. v. Acacia Research Corp.*, No. 05 Civ. 7495, 2006 U.S. Dist. LEXIS 3900, at * 14-15 (S.D.N.Y. Jan. 30, 2006) (citations omitted). (See Appendix to Motion to Dismiss pp. A41-A42; D.I. 9). Epic complains only of Defendants' pending litigation in the Eastern District of Texas. (See Answering Brief pp. 8-9; D.I. 14). Epic conveniently ignores the additional factors of the relevant test because those factors weigh in favor of Defendants.

First, the correspondence with Epic did not come from Defendants' outside counsel. (See Hansen Decl., Ex. 1; D.I. 15). The licensing letter was sent by Edward J. Treska on behalf of RSC in an effort to achieve an amicable license with Epic instead of resorting to litigation. *See id.* Second, nowhere does Epic allege that Defendants threatened, much less contacted, any of Epic's customers. (See, e.g., Complaint and Answering Brief; D.I. 1 and 14, respectively). Additionally, Defendants did not give Epic an unfairly short period of time to respond to the letters before resorting to legal options. (See Hansen Decl., Ex. 1; D.I. 15). Instead, the letter encouraged the interested

3

parties to schedule an appointment to discuss the matter, including a potential license. *See id*. In fact, on or about April 3, 2006, Mr. Treska attempted to contact Ms. Judy Faulker, Epic's President and CEO, to schedule such an appointment, and instead of returning his telephone call, Epic filed this declaratory action. (See Treska Decl., ¶ 5).

The Northern District of California dismissed a case on similar facts. In *Fresenius*, the patent owner sent a single licensing letter to FUSA, in which it discussed its on-going patent infringement suit against a different company, included a copy of the preliminary injunction issued against the other company and a copy of the claim construction order, and stated that FUSA may also be liable for infringement. The letter further included an offer to engage in licensing negotiations. *Fresenius*, 207 F. Supp. 2d at 1010. FUSA did not bother to respond to the letter, but instead filed a declaratory judgment action. *Id*. at 1010-11. In dismissing the action the court found that:

> **The single letter from [the patentee] was insufficient to create an actual controversy. The letter was the first communication between the parties regarding the activities at issue. It sought to open negotiations for a resolution without litigation…. Significantly, FUSA did not even bother to respond to this offer before filing suit.**

*Id*. at 1011-12 (emphasis added).

FUSA argued that the letter accused FUSA of patent infringement, was sent by "enforcement" counsel, and was threatening because it contained extensive discussion of the other lawsuit. *Id*. at 1012. Quoting the Federal Circuit, the court stated:

> To be sure, any time parties are in negotiation over patent rights, the possibility of a lawsuit looms in the background. No patent owner with any sense would open negotiations by assuring his opposite party that he does not intend to enforce his patent rights under any circumstances. The threat of enforcement--either directly by the patentee or indirectly by a third party to whom the patentee licenses or sells the patent--is the entire source of the patentee's bargaining power.

*Id.* (quoting *EMC*, 89 F.3d at 811).  Where, as is the case here, an offer to negotiate exists, "[i]t [is] objectively unreasonable to fear imminent suit, since negotiations [have] not even begun, much less failed."  *See id.*  Accordingly, the *Fresenius* court dismissed the action.

Here, as in *Fresenius*, Epic did not even give licensing discussions a chance to begin or fail.  Thus, Epic's action should be dismissed for the same reasons as the action in *Fresenius*.

### III.    Epic Has No Reasonable Apprehension That It Would or Could Be Sued for Patent Infringement by Acacia.

Epic must show, by a preponderance of the evidence, that it had a reasonable apprehension that it would be sued by Acacia in order to maintain declaratory judgment jurisdiction.  *See Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992).  However by Federal mandate, only a patentee, assignee, or exclusive licensee has standing to bring a patent infringement suit.  *See* 35 U.S.C. §§ 100(d) and 281; *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1551-52 (Fed. Cir. 1995).

Acacia is none of these.  Intellimed Corporation is the owner of the '743 patent, and only RSC maintains the rights to license and enforce the '743 patent via an exclusive license from Intellimed.  (See Hansen Decl., Ex. 1; D.I. 15 (stating that "Resource Scheduling Corporation owns the rights to license and enforce" the '743 patent); Treska Decl., ¶ 4).  Thus, for Epic to believe that Acacia could possibly bring suit against it is nonsensical.

Epic cannot create subject matter jurisdiction where none exists by simply alleging so in its Complaint.  Epic must still meet its burden of proof.  Because Epic does

not and cannot have a reasonable apprehension that it would or could be sued by Acacia, Acacia must be dismissed from this lawsuit.

**IV.    Declining to Exercise Declaratory Judgment Jurisdiction Is Especially Appropriate Here.**

An accused infringer has the right to seek declaratory judgment relief where the patentee has "refused to grasp the nettle and sue," leaving the accused infringer with an "*in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of [its] enterprises." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 (Fed. Cir. 1988).  At the time it filed suit, however, Epic was not yet faced with any such dilemma since this was the first communication from Defendants, there was an outstanding offer to negotiate, and Epic did not bother to respond.

> **Exercising jurisdiction over declaratory-relief actions under such circumstances would create a strong disincentive for patentees to communicate with potential infringers before filing suit, for fear of being sued first and thus forced to litigate in the defendant's forum of choice.**

*Fresenius*, 207 F. Supp. 2d at 1012-13 (emphasis added).  Accordingly, the Court should decline to exercise jurisdiction over Epic's declaratory judgment action, and should instead dismiss Epic's Complaint in its entirety.

**V.    Alternatively, the Court Should Transfer this Action to the Eastern District of Texas.**

Epic has conceded that its choice of forum is not determinative.  (See Answering Brief pp. 13 n.2; D.I. 14).  Further, Epic did not file this action on its "home turf"[1] and as such, it has already indicated its willingness to litigate this case in a forum that is

---

[1]  Epic's principal place of business, its counsel (excluding required Delaware local counsel), and presumably its witnesses and documents are located in Wisconsin.  (See Complaint, ¶ 1 and "Of Counsel" signature block; D.I. 1).

inconvenient to it. *See Filmtec Corp. v. Allied-Signal, Inc.*, 13 U.S.P.Q.2D 1979, 1982-83 (D. Del. 1989).  Because Epic's inconvenience is inevitable, Defendants' convenience becomes much more relevant.  Here, the balance of convenience favors Defendants because Defendants are already engaged in litigation concerning the '743 patent in the Eastern District of Texas, and it would be much more convenient for Defendants to litigate all actions in the same forum.

Further, transferring this case to the Eastern District of Texas will conserve judicial resources and promote judicial economy.  Only one court will have to familiarize itself with the patent, the patent's file history, and the patented technology, thereby preventing duplicative efforts regarding claim construction, validity, enforceability, etc. which could potentially have a *res judicata* effect.  Allowing this action to proceed in Delaware would duplicate the parties' and Courts' efforts and expenses, thereby reducing efficiency overall.  Moreover, allowing litigation to proceed in two different forums regarding the same patent poses the risk of two separate district courts reaching conflicting decisions.

Indeed, as is the case here, where a Section 1404(a) transfer would greatly aid the movant, yet barely, if at all, disadvantage the opponent, the motion should be granted. *See, e.g., Minstar, Inc. v. Laborde*, 626 F. Supp. 142, 146 (D. Del. 1985) (citations omitted).

## VI.    <u>Conclusion.</u>

Epic's declaratory judgment action should be dismissed in its entirety, or at a minimum, Defendant Acacia should be dismissed for lack of subject matter jurisdiction. Alternatively, Defendants request the Court to transfer this action to the United States District Court for the Eastern District of Texas.

Respectfully submitted,

Dated: May 31, 2006

      /s/ Karen V. Sullivan
Kathleen M. Jennings (No. 913)
Karen V. Sullivan (No. 3872)
OBERLY, JENNINGS & RHODUNDA, P.A.
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, Delaware 19899
(302) 576-2000
(302) 576-2004 (fax)
Email:  KSullivan@ojlaw.com

    and

Jonathan T. Suder
Edward E. Casto, Jr.
Christie B. Lindsey
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
(817) 334-0400
(817) 334-0401 (fax)
Email:  jts@fsclaw.com
Email:  casto@fsclaw.com
Email:  lindsey@fsclaw.com

Attorneys for Defendants Acacia Research Corporation & Resource Scheduling Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May, 2006, the foregoing Reply Brief in Support of Defendants' Motion to Dismiss and in the Alternative Motion to Transfer Venue was electronically filed with the Clerk of the Court for the U.S. District Court, District of Delaware, using CM/ECF which will send notification of such filing to the following:

Jeffrey L. Moyer
moyer@rlf.com
RICHARDS LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, DE  19801

        /s/ Karen V. Sullivan
        KAREN V. SULLIVAN